UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTOPHER NEAMAN, <br><br> Plaintiff, <br><br> v. <br><br> WASHINGTON STATE DEPARTMENT OF CORRECTIONS; TERRA AMBROSE; ELISA SAHORE; DAVID ARCURI; DAVID HATCH, <br><br> Defendants. | CASE NO. 3:24-cv-5176-BHS <br><br> ORDER |

This matter is before the Court on defendants David Arcuri and David Hatch's motion for summary judgment. Dkts. 39, 41. Arcuri and Hatch represented plaintiff Christopher Neaman during his state community custody term. Neaman asserts criminal legal malpractice claims against them based on their failure to object to the trial court's modification of his sentence after his community custody term ended.

### I.  BACKGROUND

On December 11, 2020, Neaman pled guilty in Pacific County superior court to possessing methamphetamine with intent to deliver, a felony. Dkt. 40-6. His offender score was 9+, resulting in a standard sentence range of 60 to 120 months. The court instead imposed 12 months of community custody under the Parenting Sentencing Alternative (PSA), RCW 9.94A.655, because Neaman was a single parent. One of the

conditions of his supervision was that he would not possess or consume controlled substances without a valid prescription. *Id.* His one-year supervision term was set to expire on December 11, 2021. Dkt. 40-7.

In September and October 2021, Neaman consumed methamphetamine and heroin, violating the conditions of his supervision. The Department of Corrections (DOC) permitted Neaman to continue with his PSA. Dkt. 40-7 at 2.

On December 6, 2021, Neaman admitted to consuming methamphetamine again. *Id.* at 3. DOC notified the court of the new violation a day later. The State signed a petition to revoke Neaman's PSA sentence on December 10, 2021, but the petition was not filed until December 14, 2021. Dkt. 40-8 at 2. Later in December—the record is unclear on exactly when—the State offered to extend Neaman's community custody by six months instead. Dkt. 40-1 at 24–25, 30.

Arcuri was then appointed as Neaman's defense counsel.[1] Arcuri testifies that it was "obvious" to him that "DOC was asking to extend jurisdiction . . . because they were basically out of jurisdiction." Dkt. 40-2, Deposition of Arcuri at 6–7. Neaman asked Arcuri if he was "still liable for [the] violation" even though the petition was filed after December 11, his PSA's expiration date. Dkt. 40-1 at 28.

Arcuri testifies he told Neaman there were two options—Neaman could accept the State's offer to extend the PSA by 6 months, or he could object to the timing of the

---

[1] Neaman and Arcuri's deposition testimony differs on whether Arcuri was appointed as defense counsel in December 2021 or January 2022. Dkts. 40-1 at 26, 40-2 at 6. However, both agree that he was appointed after the State filed its revocation petition on December 14, 2021. *Id.*

ORDER - 2

petition at a hearing. Dkt. 40-2, Deposition of Arcuri at 17–18. Because the violation occurred during the community custody term and the State promptly filed the petition, Arcuri thought any objection to the timing of the petition would be denied. *Id.* at 19. He testifies his "legal opinion" was and still is, that under *State v. Hultman*, 92 Wn.2d 736 (1979), the State could still "sanction [Neaman] so long as they don't . . . waste time and they move the case along." *Id.* at 9. He states he was concerned that if he objected, the State would withdraw its offer to extend the PSA. *Id.* at 18.

Neaman denies that Arcuri discussed these two options with him. Dkt. 40-1, Deposition of Neaman at 30. He alleges Arcuri told him instead, "Your violation happened on the 5th, so it doesn't matter that your sentence is up." *Id.* at 27.

On January 21, 2022, the court extended the PSA by six months. Dkt. 40-9 at 2. Neaman admits he was happy with that outcome because he "could still be a father." Dkt. 40-1 at 30–31.

On February 22, 2022, Neaman provided oral swab samples that tested positive for methamphetamine and heroin—his fourth violation. Dkt. 40-10 at 3. DOC recommended the court revoke Neaman's PSA because he was "a high risk to the community, his 9-year old son, and himself." *Id.* at 4. DOC conducted two more oral swab tests in March 2022, both of which tested positive for several controlled substances, including methamphetamine and heroin. Dkts. 40-11, 40-12.

On April 15, 2022, the court revoked Neaman's PSA and ordered him detained. Dkt. 40-13.

ORDER - 3

1	Neaman requested new counsel in May 2022, and Hatch was appointed in Arcuri's
2	place. Dkts. 40-2, 40-14. Hatch appealed the PSA revocation order to the state court of
3	appeals, alleging procedural issues at the revocation hearing. Dkts. 40-16, 40-19. Neaman
4	was assigned appellate counsel in September 2022, who "brought up the jurisdictional
5	issue." Dkt. 40-18. Neaman admits that he did not tell Hatch that his community custody
6	term had expired by the time the December 2021 petition was filed. Dkt. 40-1 at 50–51.
7	He claims that because Arcuri told him "it wasn't an issue . . . [he] never thought about it
8	again . . ." until his appellate attorney mentioned it. *Id.* at 51.

    On appeal, the State conceded that the trial court was not authorized to extend or subsequently revoke Neaman's PSA sentence. *State v. Neaman*, 2023 WL 4195806, at *1 (Wash. Ct. App. 2023). The state court of appeals agreed, concluding that under the PSA statute, RCW 9.94A.655, "the trial court may only modify a PSA sentence *during* the community custody term." *Id.* at *3. The court reversed Neaman's revocation and detention order. *Id.*

    Neaman sued Arcuri and Hatch for legal malpractice. Dkt. 1-2. He argues because they did not "object to the trial court's unlawful exercise of jurisdiction and authority over [him]," their conduct resulted in his unlawful incarceration. Dkt. 1-2 at 10. He also asserts a false imprisonment claim against DOC and § 1983 civil rights claims against two community custody officers, Elisa Sahore and Terra Ambrose. He seeks damages for his "loss of liberty" and the emotional distress he "suffered from witnessing how his son has been affected by the interruption of the father/son relationship." *Id.* at 8–9; Dkt. 44 at 15–15.

Sahore and Ambrose timely removed the case to this Court based on the § 1983 claims. Dkt. 1.

Hatch, joined by Arcuri, Dkt. 41, moves for summary judgment on Neaman's legal malpractice claims. Dkt. 39. He argues that in addition to the traditional elements of a negligence claim, a criminal legal malpractice plaintiff must also prove that he obtained post-conviction relief, and that he was actually innocent of the underlying crime. *Id.* at 11 (citing *Ang v. Martin*, 154 Wn.2d 477, 482 (2005)). He argues Neaman pled guilty to a felony and admitted to his community custody violations, and thus cannot establish actual innocence. He also contends his conduct did not proximately cause the claimed harm. *Id.* at 20–23.

Neaman responds that his case falls under an exception to the actual innocence requirement because the trial court lacked jurisdiction to extend and revoke his PSA. Dkt. 44 at 9 (citing *Powell v. Associated Couns. for Accused*, 131 Wn. App. 810, 815 (2006)). He further argues Arcuri and Hatch's "failure to bring the correct law to the court's attention" caused his unlawful incarceration. *Id.* at 14.

## II.  DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that

party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. at 248.

**B.  Neaman is exempt from proving actual innocence.**

In Washington, a plaintiff claiming negligent representation by an attorney in a civil matter bears the burden of proving four elements by a preponderance of the evidence: (1) the existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in

breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred. *Hizey v. Carpenter,* 119 Wn.2d 251, 260–61 (1992).

A criminal malpractice suit requires the plaintiff to prove two additional elements related to proximate causation. *Ang*, 154 Wn.2d at 482. First, the plaintiff must have obtained postconviction relief. *Id.* Second, the plaintiff must "prove by a preponderance of the evidence that they were actually innocent of the underlying criminal charges." *Id.* at 486. The public policy rationale behind the actual innocence requirement is to:

(1) prohibit criminals from benefiting from their own bad acts;

(2) maintain respect for our criminal justice system's procedural protections;

(3) remove the harmful chilling effect on the defense bar;

(4) prevent suits from criminals who may be guilty, but could have received a better deal; and

(5) prevent a flood of nuisance litigation.

*Id.* at 485 (citing *Falkner v. Foshaug*, 108 Wn. App. 113, 123–24 (2001)).

The state court of appeals carved out a limited exception to the actual innocence requirement in *Powell*. 131 Wn. App. at 815. Powell pled guilty to a gross misdemeanor with a maximum sentence of one year, but was sentenced "for a Class C felony to 38.25 months of confinement." *Id.* at 811–12. By the time he was released, he had already served over 20 months. *Id.* Based on the *Ang* public policy factors, the court of appeals concluded Powell's case was "more akin to that of an innocent person wrongfully convicted than of a guilty person attempting to take advantage of his own wrongdoing."

ORDER - 7

*Id.* at 815. The trial court had "no authorization . . . to issue a sentence longer than 12 months." *Id.* at 814. Defense counsel's failure to object when the trial court sentenced Powell for a felony was "an egregious error," resulting in a prison term "substantially longer than the maximum term allowed by statute." *Id.* at 815.

In *Piris v. Kitching*, the Washington Supreme Court recognized, but declined to extend, the "extremely narrow circumstances supporting the *Powell* exception." 185 Wn.2d 856, 864 (2016). Piris was sentenced to 159 months based on an erroneous offender score of seven, which had a standard range of 159 to 211 months. *Id.* at 859. His correct offender score was six, with a standard range of 146 to 194 months. *Id.* His counsel failed to reschedule his resentencing. *Id.* at 858. Twelve years later, Piris was resentenced to 146 months, but he had already served 159 months. *Id.* at 858–60. He sued his defense counsel for legal malpractice because he was in prison 13 months longer than his authorized sentence. *Id.* The supreme court held that because both sentences were within the trial court's authority, the *Powell* exception did not apply. *Id.* at 865. Piris was required to—and failed to—show he was actually innocent of the underlying criminal charges. *Id.* at 861, 866.

Neaman does not dispute the trial court's authority to sentence him to a PSA under RCW 9.94A.655. In fact, he admits the trial court could have sentenced him to "several years imprisonment" had it followed the standard range for his conduct. Dkt. 44 at 2 n.1. Instead, he argues the trial court did not have jurisdiction to extend his PSA. The Court agrees. Neaman committed the December 2021 violation during his community custody term, but the State petitioned to revoke the PSA three days too late—after Neaman's

community custody term had expired. Because the court was not authorized and had no jurisdiction to extend and ultimately revoke his PSA, Neaman is entitled to the *Powell* actual innocence exception. *See* RCW 9.94A.655(8)(a) (The court may bring an offender sentenced to a PSA "during the period of community custody . . . to determine if any violations of the conditions of the sentence have occurred."). Neaman does not need to prove actual innocence to proceed on his criminal legal malpractice claim. On this narrow basis, defendants' motion for summary judgment is **DENIED**.

**C.    The Court is not persuaded that Neaman would not have received a better result had Arcuri and Hatch raised the trial court's lack of jurisdiction.**

Hatch and Arcuri also argue that Neaman "can only speculate" that he would have fared better if they had raised the State's late petition with the trial court. Dkt. 39 at 21; Dkt. 41 at 3.

Proximate causation includes cause in fact and legal causation. *Ang*, 154 Wn.2d at 482 (citing *Hartley v. State*, 103 Wn.2d 768, 777 (1985)). Cause in fact refers to "but for" causation, or the "physical connection between an act and an injury." *Hartley*, 103 Wn.2d at 778. The plaintiff must establish that "but for" the attorney's negligence, they would probably have obtained a better result. *Daugert v. Pappas*, 104 Wn.2d 254, 259 (1985); *Smith v. Preston Gates Ellis, LLP*, 135 Wn. App. 859 (2006). Whether the judge in the underlying proceeding would have ruled differently is a "question of law for the judge, irrespective of whether facts are undisputed . . ., based upon a review of the transcript and record of the underlying action. *Daugert*, 104 Wn.2d at 259, 263. Legal causation refers to "whether liability *should* attach as a matter of law given the existence of cause in fact."

ORDER - 9

*Hartley*, 103 Wn.2d at 779. Unless a criminal legal malpractice plaintiff is actually innocent, "their own bad acts, not the alleged negligence of defense counsel, should be regarded as . . . the legal cause of their harm." *Ang*, 154 Wn.2d at 485.

The Court is not persuaded that the trial court's response, had Arcuri and Hatch objected to its lack of jurisdiction is so speculative. The trial court did not have jurisdiction when it extended, and later revoked, Neaman's PSA. It is entirely conceivable, perhaps likely, that the trial court would not have continued adjudicating Neaman's community custody violations had it known it was acting without jurisdiction—a position advanced by Neaman's appellate counsel and conceded by the State in its response to the appeal. Even Arcuri and Hatch concede "that scenario is plausible." Dkt. 39 at 23. The Court declines to address this question on this motion for summary judgment. Arcuri and Hatch's motion for summary judgment, Dkts. 39 and 41, is **DENIED** on the basis of proximate cause[2].

**IT IS SO ORDERED.**

Dated this 3rd day of March, 2025.

BENJAMIN H. SETTLE
United States District Judge

---

[2] Hatch's reply, Dkt. 47, raises the substantial question of whether Neaman presents sufficient evidence as to the remaining elements of a criminal legal malpractice claim. New issues cannot be raised in a reply brief but may be raised in motion practice.