UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER NEAMAN,

                    Plaintiff,

     v.

WASHINGTON STATE
DEPARTMENT OF CORRECTIONS;
TERRA AMBROSE; ELISA SAHORE,

                Defendant.

CASE NO. 3:24-CV-5176-BHS

ORDER

This matter is before the Court on defendants Washington State Department of Corrections (DOC), Terra Ambrose, and Elisa Sahore's motion for summary judgment. Dkt. 52. Neaman brings § 1983 claims against community custody officers Sahore and Ambrose and a false imprisonment claim against DOC for their acquiescence in the trial court's modification of his sentence without jurisdiction.

## I.   BACKGROUND

On December 11, 2020, Neaman pled guilty in Pacific County superior court to possessing methamphetamine with intent to deliver, a felony. Dkt. 40-6. His offender score was 9+, resulting in a standard sentence range of 60 to 120 months. The court

1  instead imposed 12 months of community custody under the Parenting Sentencing

2  Alternative (PSA), RCW 9.94A.655, because Neaman was a single parent. One of the

3  conditions of his supervision was that he would not possess or consume controlled

4  substances without a valid prescription. *Id.* His one-year supervision term was set to

5  expire on December 11, 2021. Dkt. 40-7.

6      In September and October 2021, Neaman consumed methamphetamine and

7  heroin, violating the conditions of his supervision. The Department of Corrections (DOC)

8  permitted Neaman to continue with his PSA. Dkt. 40-7 at 2.

9      On December 6, 2021, Neaman admitted to consuming methamphetamine again.

10  *Id.* at 3. That same day, Ambrose emailed the prosecutor about Neaman's violation,

11  alerting him that Neaman's sentence end date was "fastly approaching" on December 11.

12  Dkt. 53-2 at 2; Dkt. 53-3 at 6. She submitted the new violation to the court a day later.

13  Dkt. 40-7 at 2–4. The State signed a petition to revoke Neaman's PSA sentence on

14  December 10, 2021, but the petition was not filed until December 14, 2021. Dkt. 40-8 at

15  2. Later in December—the record is unclear on exactly when—the State offered to extend

16  Neaman's community custody by six months instead. Dkt. 40-1 at 24–25, 30.

17      On January 21, 2022, the court extended the PSA by six months. Dkt. 40-9 at 2.

18  Neaman admits he was happy with that outcome because he "could still be a father." Dkt.

19  40-1 at 30–31.

20      On February 22, 2022, Neaman provided oral swab samples that tested positive for

21  methamphetamine and heroin—his fourth violation. Dkt. 40-10 at 3. DOC recommended

22  the court revoke Neaman's PSA because he was "a high risk to the community, his 9-year

1    old son, and himself." *Id.* at 4. DOC conducted two more oral swab tests in March 2022,

2    both of which tested positive for several controlled substances, including

3    methamphetamine and heroin. Dkts. 40-11, 40-12.

4         On April 15, 2022, the court revoked Neaman's PSA and ordered him detained.

5    Dkt. 40-13. His defense counsel appealed the PSA revocation order to the state court of

6    appeals, alleging procedural issues at the revocation hearing. Dkts. 40-16, 40-19. Neaman

7    was assigned appellate counsel in September 2022, who "brought up the jurisdictional

8    issue." Dkt. 40-18.

9         On appeal, the State conceded that the trial court was not authorized to extend or

10   subsequently revoke Neaman's PSA sentence. *State v. Neaman*, 2023 WL 4195806, at *1

11   (Wash. Ct. App. 2023). The state court of appeals agreed, concluding that under the PSA

12   statute, RCW 9.94A.655, "the trial court may only modify a PSA sentence *during* the

13   community custody term." *Id.* at *3. The court reversed Neaman's revocation and

14   detention order. *Id.*

15        Neaman sued his lawyers, David Arcuri and David Hatch, for legal malpractice,

16   DOC for false imprisonment, and Ambrose and Sahore for § 1983 violations of his

17   constitutional liberty interests. Dkt. 1-2. Arcuri and Hatch have since settled with

18   Neaman.

19        DOC, Ambrose, and Sahore move for summary judgment. Dkt. 52. DOC argues

20   Neaman's false imprisonment claim fails because DOC's conduct was pursuant to

21

22

1   facially valid court orders. *Id.* at 7. Ambrose and Sahore claim immunity from suit. *Id.* at

2   10. [1]

3      Neaman responds that DOC, Ambrose, and Sahore "*participated* in the pursuit of

4   an invalid [court] order" that violated his constitutional rights. Dkt. 59 at 8.

5   ## II.   DISCUSSION

6   **A.    Summary Judgment Standard**

7      Summary judgment is proper if the pleadings, the discovery and disclosure

8   materials on file, and any affidavits show that "there is no genuine dispute as to any

9   material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

10  56(a). In determining whether an issue of fact exists, the Court must view all evidence in

11  the light most favorable to the nonmoving party and draw all reasonable inferences in that

12  party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v.*

13  *Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where

14  there is sufficient evidence for a reasonable factfinder to find for the nonmoving party.

15  *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient

16  disagreement to require submission to a jury or whether it is so one-sided that one party

17  must prevail as a matter of law." *Id*. at 251–52.

18     The moving party bears the initial burden of showing that there is no evidence

19  which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*,

20  477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party

21  _____

22  [1] The parties do not address whether Neaman's acceptance of the extended PSA was valid consent to the trial court's jurisdiction over him.

1    then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the

2    nonmoving party fails to establish the existence of a genuine issue of material fact, "the

3    moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

4    There is no requirement that the moving party negate elements of the non-movant's case.

5    *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met

6    its burden, the non-movant must then produce concrete evidence, without merely relying

7    on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477

8    U.S. at 248.

9    **B.    Neaman fails to establish false imprisonment because he cannot prove that DOC acted without lawful authority.**

10   DOC argues Neaman cannot establish false imprisonment because DOC was

11   merely following facially valid court orders. Dkt. 52 at 7. Neaman responds that DOC

12   participated unreasonably and without good faith in unlawfully imprisoning him by

13   withholding from the court that his community custody term had expired. Dkt. 59 at 8–9.

14   To prove false imprisonment by DOC, "the plaintiff must show DOC acted

15   without lawful authority and imprisonment was not enacted pursuant to a valid legal

16   process." *Stephens v. State*, 186 Wn. App. 553, 558 (2015) (citing *Blick v. State*, 182 Wn.

17   App. 24, 33 (2014)). In other words, the plaintiff must demonstrate DOC had a duty to

18   release him early. *Blick*, 182 Wn. App. at 33. However, even when a defendant's

19   judgment and sentence is invalid, DOC is required to follow the court's mandate. *State v.*

20   *Broadway*, 133 Wn.2d 118, 135 (1997). Only the court, not DOC, has the authority to

21

22

1    correct an erroneous judgment and sentence. *Id.* at 135–36 (citing *In re Pers. Restraint of*

2    *Davis*, 67 Wn. App. 1 (1992)).

3         DOC followed court orders extending and revoking Neaman's PSA. It did not

4    have authority to change Neaman's community custody term, despite the court's

5    erroneous exercise of jurisdiction. There is no record of DOC withholding any

6    information from the court. Rather, there is evidence to the contrary—Ambrose

7    communicated Neaman's community custody term expiration date to the prosecutor. Dkt.

8    53-2 at 2. The notice of violation Ambrose submitted to the court expressly stated that

9    Neaman's community custody term was ending on December 11, 2021. Dkt. 40-7 at 2.

10   None of these undisputable facts suggest DOC acted unreasonably or without good faith,

11   even viewed in the light most favorable to Neaman. He has not established DOC

12   otherwise had any duty to release him early, and thus cannot prove DOC falsely

13   imprisoned him.

14        DOC's summary judgment motion on Neaman's false imprisonment claim is

15   **GRANTED**.

16   **C.    Ambrose and Sahore did not violate Neaman's constitutional rights, and even if they did, they are entitled to qualified immunity on the § 1983 claims.**

17        Ambrose and Sahore persuasively argue they did not personally violate any of

18   Neaman's constitutional rights and that they are immune to suit on numerous grounds.

19   Dkt. 52 at 9–11.

20

21

22

1    Neaman responds that Ambrose and Sahore cannot have qualified immunity

2    because under state law, it is limited to the "allegedly negligent supervision of parolees

3    who harm third parties." Dkt. 59 at 10.

4    To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "(1) that a right

5    secured by the Constitution or laws of the United States was violated, and (2) that the

6    alleged violation was committed by a person acting under the color of state law." *Horsley*

7    *v. Kaiser Found. Hosps., Inc.*, 746 F.Supp.3d 791, 802 (N.D. Cal. 2024) (citing *West v.*

8    *Atkins*, 487 U.S. 42, 48 (1988)).

9    The qualified immunity doctrine shields government officials performing

10    discretionary functions "from liability for civil damages insofar as their conduct does not

11    violate clearly established statutory or constitutional rights of which a reasonable person

12    would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A two-part test

13    resolves claims of qualified immunity by determining whether plaintiffs have alleged

14    facts that "make out a violation of a constitutional right," and if so, whether the "right at

15    issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v.*

16    *Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01

17    (2001)). The "clearly established" standard requires that legal principles clearly prohibit

18    the officer's conduct in the particular circumstances before him. The rule's contours must

19    be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in

20    the situation he confronted." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018).

21    Qualified immunity protects officials "who act in ways they reasonably believe to

22    be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting

1    *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). The reasonableness inquiry is

2    objective, evaluating whether an official's actions are "objectively reasonable" in light of

3    the facts and circumstances confronting them, without regard to their underlying intent or

4    motivation. *See Graham v. Connor*, 490 U.S. 386, 397 (1989)). Even if an official's

5    decision is constitutionally deficient, qualified immunity shields her from suit if her

6    misapprehension about the law applicable to the circumstances was reasonable. *See*

7    *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). As a privilege from suit, not merely from

8    liability, qualified immunity "gives ample room for mistaken judgments" and protects

9    "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citing

10   *Malley v. Briggs*, 475 U.S. 335 (1986)).

11          Ambrose and Sahore persuasively contend that if anyone violated Neaman's

12   liberty interests in unlawfully extending, and ultimately revoking, his PSA, it was the trial

13   court, not them. Ambrose notified the prosecutor of Neaman's impending term expiration

14   date on December 6, 2021, the same day Neaman admitted to using methamphetamine.

15   She notified the court of the violation the very next day, before Neaman's community

16   custody term expired. To the extent Ambrose and Sahore personally violated any of

17   Neaman's rights, they only facilitated the *court's* violation of the PSA statute. RCW

18   9.94A.655(8)(a), (c) (the trial court may bring an offender and adjudicate a community

19   custody violation "during the period of community custody"). Any violation of state law

20   is irrelevant to the question of federal qualified immunity. *See Case v. Kitsap Cnty.*

21   *Sheriff's Dept.*, 249 F.3d 921, 929 (9th Cir. 2001) (the relevant question is whether the

22   government official violated federal constitutional rights "rather than merely a state law

or policy provision)." Neaman's reliance on state qualified immunity laws is similarly misplaced.

Ambrose and Sahore's conduct does not rise to a violation of Neaman's constitutional rights. But even if it did, Neaman has not cited any authority demonstrating that Ambrose and Sahore's actions were clearly unlawful in these circumstances.[2]

Neaman cannot hold Ambrose and Sahore liable for the trial court's error. The Court concludes they are entitled to qualified immunity on the § 1983 claims against them. Ambrose and Sahore's motion for summary judgment on Neaman's § 1983 claims is **GRANTED**.

Neaman's claims against DOC, Ambrose, and Sahore are **DISMISSED with prejudice**.

The Clerk shall close the case.

Dated this 21st day of April, 2025.

BENJAMIN H. SETTLE
United States District Judge

---

[2] Indeed, no one raised the trial court's lack of jurisdiction until the issue was before the state court of appeals, where the State did not resist Neaman's appeal.